IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROSANNA L. MILLER, | : |
| | : |
| **Plaintiff,** | : |
| | : Case No. 2:21-cv-03973 |
| v. | : |
| | : Chief Judge Algenon L. Marbley |
| OHIO CIVIL RIGHTS COMMISSION, et al., | : |
| | : Magistrate Judge Vascura |
| | : |
| **Defendants.** | : |

## ORDER

This matter is before the Court on Plaintiff's Motion for Emergency Preliminary Injunction or Temporary Restraining Order for ADA Accommodations (ECF No. 23). Plaintiff seeks a court order for the following: (i) the Department of Justice to enforce her Americans with Disabilities Act ("ADA") claims on her behalf; (ii) for this Court to appoint counsel; (iii) for the Defendants Mount Carmel, Orthopedic One, and Cornerstone Therapy to relax their mask requirement for Plaintiff. (*Id.*). On January 10, 11, and 12, Defendants Mount Carmel Medical Group ("Mount Carmel"), Orthopedic One, and Cornerstone Therapy, respectively, filed their Responses in Opposition requesting that this Court deny Plaintiff's motion. (ECF No. 26; ECF No. 27; ECF No. 28). Defendants the Ohio Civil Rights Commission ("Commission") and Melody Smith neither responded nor appear implicated by Plaintiff's request. This Court held a 65.1 conference on Friday, January 14, 2022. For the reasons set forth below, this Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order.

I.     BACKGROUND

A. Factual Background

1

Rosanna Miller has trouble seeing, breathing, and walking. (ECF No. 23 at 3; ECF No. 23-1 at 1). Before Miller's breathing problems caused her to stop working, she was employed as a medical professional. (ECF No. 7 at 2). Throughout her career, Miller worked as a licensed Medication Administrator, STNA, Phlebotomist, as well as EKG and Patient Care Technician. (*Id.*). In the spring and summer of 2020, Miller sought medical care at Orthopedic One, Cornerstone Therapy, and Mount Carmel. (ECF No. 23-1 at 2, 4, 6). Orthopedic One, an orthopedic clinic, informed Miller that all of its patients must wear a facemask during in-office visits. (*Id.* at 2). Cornerstone Therapy, a physical therapy clinic, conveyed a similar message. (*Id.* at 4). Mount Carmel, the healthcare provider treating Miller's breathing issues, voiced the same policy—that masks were required for in-office visits. (*Id.* at 6).

Miller claims that she is physically unable to wear a mask because of her breathing issues. (ECF No. 7 at 4). According to Miller, the interaction of the medical providers' policies and her inability to wear a mask results in the denial of medical treatment. (*Id.*). Her physician, however, declined to issue her an exemption to the masking requirement, advising instead that Miller should wear a mask due to her breathing issues. (*Id.* at 9). Notably, Miller admits that Mt Carmel, Cornerstone Therapy, and Orthopedic One offered her virtual alternatives to accommodate her self-described inability to not wear a mask. (*See id.* at 10, 11, 14); (*see also* ECF No 23 at 5). Unsatisfied with this option, Miller filed complaints with the Commission alleging discrimination based on disability against all three medical providers. (ECF No. 23 at 4).

On January 6, 2021, Miller returned to Mount Carmel. (*Id.* at 4–5). On this occasion, she sought to have her blood drawn for overdue testing. (*Id.*). Although she entered the facility without a mask, she wore a face shield. (*Id.*). She entered the building and waited for her appointment. (*Id.*). During the that time—approximately thirteen minutes—Miller was not asked

by Mount Carmel staff to wear a face mask. (*Id.*). This changed, however, when she was called back for her appointment. (*Id.*). When Miller walked to her medical professional's work area to have her blood drawn, the phlebotomist requested that Miller put on a mask. (*Id.*). Although Miller does not explicitly state, she apparently refused this request and left. (*Id.*).

Seven months later, Miller claims that she was denied medicine because she was unable to complete certain in-office medical procedures. (*Id.*). Moreover, Miller claims that she was unable to have these procedures because Mount Carmel refused her requested accommodation of wearing no mask. (*Id.*). Yet, she also admits that Mount Carmel scheduled her for a telehealth appointment. (*Id.*). Moreover, Miller asserts that on one other occasion she similarly did not obtain her full prescription, receiving a one-month instead of her usual three-month supply. (*Id.*) (citing ECF No. 7 at 6).

Finally, in November of 2021, Miller received communication from Mount Carmel reminding her to schedule an unspecified, annual procedure. (*Id.*). Miller contacted Mount Carmel as requested. (*Id.*). During her telephone call, Miller noted that she had been previously refused entry for not wearing a mask at Mount Carmel's facility. (*Id.*). According to Miller, the scheduler intimated that Miller should be able to access the office without a mask. (*Id.*). Miller, wanting to ensure this was the case, pressed the issue. (*Id.*). After being transferred to a different staff member at Mt. Carmel, a nurse told Miller she would be unable to complete her procedure without wearing a mask. (*Id.*).

According to Miller, the above examples amount to the improper denial of medical services. (*Id.*). Curiously, the factual basis of her TRO emphasizes conduct by Mount Carmel. (*Id.*). Other than actions that took place in 2020, she does not provide any updates on the policies or conduct of Orthopedic One or Cornerstone Therapy. (*See id.*). Instead, Miller attaches

3

affidavits she submitted to the Ohio Civil Rights Commission and appears to incorporate them into her motion. (*See* ECF No. 23-1 at 1–7). Finally, her motion does not seek any action by this Court concerning neither the Commission nor Melody Smith. (*See* ECF No. 23).

### B. Procedural Background

In the summer of 2020, Plaintiff filed a total of three complaints with Defendant Ohio Civil Rights Commission against the following additional Defendants: Orthopedic One on July 10, 2020, (ECF No. 23-1 at 2); Cornerstone Therapy on July 10, 2020, (*Id.* at 4); and Mount Carmel on August 20, 2020, (*Id.* at 5). On April 1, 2021, Defendant Commission found "No Probable Cause" as to all alleged discriminatory conduct by Defendants Orthopedic One, Cornerstone Therapy, and Mt. Carmel. (ECF No. 7 at 6). On April 9, 2021, Plaintiff requested reconsideration of Defendant Commission's decisions. (*Id.* at 9–14). On May 27, 2021, Defendant Commission issued a Letter of Determination Upon Reconsideration finding the same. (*Id.* at 16).[1]

On June 28, 2021, Plaintiff, proceeding pro se, filed her complaint in the Franklin County Court of Common Pleas. (ECF No. 7 at 1). There, Plaintiff sought judicial review of Defendant Commission's final order and asserted several claims in the first instance, including violations of: the Americans with Disability Act ("ADA") and analogous state law statutes for failure to accommodate; informed consent regulations under 45 C.F.R. § 46.166; Ohio Revised Code § 119.03(G) concerning the Governor's power to issue mask mandates; and the ADA for retaliating against her for participating in a protected activity. (*Id.* at 3–7).

---

[1] While Plaintiff only provides a "Letter of Determination Upon Reconsideration" as to Mt. Carmel, it is safe to assume she received this same decision concerning all medical providers. According to her Complaint, she alleges the Commission "denied" her disability when the medical providers "force her to wear a mask against her will." (ECF No. 7 at 3).

4

On July 19, 2021, Defendant Mount Carmel filed a notice of removal in this Court. (ECF No. 1 at 1). On January 03, 2022, Plaintiff filed a Motion for Emergency Preliminary Injunction or Temporary Restraining Order for ADA Accommodations. (ECF No. 23).

## II. STANDARD OF REVIEW

A Temporary Restraining Order ("TRO") is an emergency measure. *See McGirr v. Rehme*, Case No. 16-464, 2017 WL 1426456, at *1, *2 (S.D. Ohio Apr. 21, 2017). Federal Rule of Civil Procedure 65(b) requires a Court to examine, on application for a temporary restraining order, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). Therefore, although some courts would examine the four factors required for issuance of a preliminary injunction, a focus on "[t]he irreparability and immediacy of harm" is all that is required. *See, e.g., Women's Med. Prof'l Corp. v. Baird*, No. 03-CV-162, 2008 WL 545015, at *1–2 (S.D. Ohio Feb. 27, 2008) (Marbley, J.) (focusing on the irreparability and immediacy of harm before ruling on TRO).

## III. LAW & ANALYSIS

### A. Immediacy of Harm

For the purposes of Plaintiff's request for emergency relief, the potential cognizable harms are: (i) denial of healthcare; and (ii) denial of medicine. In addition to irreparability, the Court must also consider the immediacy of the harm Plaintiff faces. Fed. R. Civ. P. 65(b)(1)(A); *Viola v. Yost*, No. 2:21-CV-3088, 2021 WL 3634734, at *5 (S.D. Ohio Aug. 17, 2021) (Marbley, J.) (citing *Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Benefit Programs*, No. 2:13-

CV-357, 2013 WL 12368588, at *2 (S.D. Ohio Apr. 25, 2013) (denying TRO in part because plaintiff failed to establish immediate harm where preliminary injunction hearing would occur before harm); *see also Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (citing *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019)) ("Irreparable harm is an 'indispensable' requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify [preliminary relief] if there is no "imminent and irreparable injury."); *Mitchell v. City of Cincinnati*, No. 1:21-CV-00626, 2021 WL 5299799, at *3 (S.D. Ohio Nov. 14, 2021) ("To satisfy the irreparable-injury requirement, an injury must be both certain and ***immediate***, not speculative or theoretical.") (emphasis added).

Here, Plaintiff has not satisfied her burden of showing immediacy of harm. Although Plaintiff's dispute arises from conduct that began in the spring of 2020, she now seeks injunctive relief. Her request, at its core, is for access to medical care. Yet, as Plaintiff admitted, she has been offered telehealth appointments, and furthermore, as each healthcare facility has represented, Plaintiff participated in at least some of those appointments. Moreover, in any case, she does not otherwise assert any facts that support the conclusion that the healthcare she seeks—specifically, in-office and without a mask—will "prevent immediate and irreparable harm … during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). Moreover, to the extent her appointments have ever been an obstacle to her receiving medicine, it appears that barrier is no longer present. Indeed, she does not complain of being currently deprived of any medicine. (*See* ECF No. 23 at 5). Thus, Plaintiff complains of no harm that is immediate.

Accordingly, her motion fails to demonstrate the immediacy of harm required for this Court to issue a temporary restraining order binding Defendants. To the extent Plaintiff seeks injunctive

relief against Defendants for past harms, no such emergency remedy is available on these facts. *See e.g., Bumpus v. Howard,* No. 3:19-CV-01081, 2021 WL 949319, at *3 (M.D. Tenn. Mar. 12, 2021) ("Plaintiff has pointed only to events that happened in the past (occurring approximately three weeks prior to the filing of the Motion), and not to specific events or harms that [s]he believes will happen immediately in the future…. Therefore, this factor weighs against Plaintiff.") Thus, Plaintiff's motion is **DENIED**.[2]

### B. Irreparability of Harm

In addition to immediacy, Plaintiff must show irreparability of harm. This factor "is an 'indispensable' requirement … and in the absence of irreparable harm, injunctive relief cannot be granted." *Beckerich v. St. Elizabeth Med. Ctr.*, No. CIV 21-105-DLB-EBA, 2021 WL 4398027, at *6 (E.D. Ky. Sept. 24, 2021), *reconsideration denied*, No. CV 21-105-DLB-EBA, 2021 WL 4722915 (E.D. Ky. Sept. 30, 2021) (citing *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019)). In the main, harm is not irreparable if it is fully compensable by money damages. *Hartman v. Acton*, No. 2:20-CV-1952, 2020 WL 1932896, at *4 (S.D. Ohio Apr. 21, 2020) (Marbley, J.) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). Moreover, when attempting to "establish[] the element of irreparable harm, a party seeking an injunction bears a heavy burden and must demonstrate more than an unfounded fear of harm." *Smith v. State Farm Fire & Cas. Co.*, 737 F. Supp. 2d 702, 713 (E.D. Mich. 2010); *Ohio Democratic Party v. LaRose,*

---

[2] To the extent Plaintiff requests that this Court order the Department of Justice to intervene in her private suit, she cites no relevant authority for this proposition. Instead, Plaintiff relies on 28 U.S.C. § 517. That statute *permits* the Attorney General via the Solicitor General "to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. Importantly, the Attorney General is not required to intervene nor does that statute appear in any way to authorize this Court to order such a result. Federal Rule of Civil Procedure 24 does not disturb this conclusion. *See* Fed. R. Civ. P. 24. To the extent Plaintiff requests representation by a non-governmental attorney for the remainder of her case, in addition to failing to assert "exceptional circumstances" as required, Plaintiff does not even attempt to assert that she is indigent. *See Lavado v. Keohane*, 992 F.2d 601, 604, 606 (6th Cir. 1993); see also *Powell v. Bartlett Med. Clinic & Wellness Ctr.*, No. 2:20-CV-02118, 2021 WL 243194, at *2 (S.D. Ohio Jan. 25, 2021). Thus, this motion is also **DENIED**.

402 F. Supp. 3d 419, 423 (S.D. Ohio 2019) (citing *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) ("The party seeking preliminary relief 'bears the burden of justifying such relief, including showing irreparable harm.'"). Finally, "[b]ecause injunctive relief "is an 'extraordinary remedy,' a court will not invoke its injunctive powers unless the movant has met its burden of proof regarding irreparable harm." *The Romantics v. Activision Pub., Inc.*, 532 F. Supp. 2d 884, 890 (E.D. Mich. 2008) (citing *McDonald's Corp. v. Burger King Corp.*, 87 F.Supp.2d 722, 725 (E.D.Mich.1999)).

Simply put, Plaintiff has not met her heavy burden. Throughout Plaintiff's briefing, she insists she has been denied medical care. Yet, upon a close reading it becomes readily apparent that this assertion fails as a factual and legal matter. First, the facts. Although Plaintiff conceives of her injury as a denial of medical care, that characterization is misleading. A more apt description is that Plaintiff has been denied in-office care in those circumstances when she is unwilling to wear a mask or produce a doctor's note explaining why she cannot wear a mask during the COVID-19 pandemic. Moreover, each provider has offered Plaintiff an alternative to in-office visits that appear to provide her full access to the services offered by each; a view that Plaintiff does little to disturb. For example, Cornerstone Therapy noted that Plaintiff was offered "the option to participate in virtual telehealth therapy sessions … [that] allow patients to participate in one-on-one skilled instruction on therapeutic exercises and activities to maintain progress and prevent regression." (ECF No. 28 at 2). Additionally, Orthopedic One clarifies that the lone "remaining interaction between Orthopedic One and Plaintiff was a review of test results between physician and Plaintiff." (ECF No. 27 at 4). Finally, Mount Carmel explains that Plaintiff sought care that concerned her "annual, non-emergent, in-office check of her medical device." (*See* ECF No. 26 at 1). And while Mount Carmel noted that these checks are at times done in-office, even before

the COVID-19 pandemic, it "was able to perform remote checks for these medical devices." (*Id.* at 4). Furthermore, although Plaintiff lists several procedures that seemingly cannot be performed remotely,[3] she fails to assert that these procedures are otherwise medically necessary. Thus, from the time Plaintiff sought medical treatment in the spring of 2020 up until the filing of her Motion requesting a Temporary Restraining Order she has had access to medical care.

Perhaps Plaintiff instead meant she was denied what she purports to be a reasonable accommodation and that is the basis of her request for emergency injunctive relief. Yet, case law in this circuit undermines her position. Even assuming she can demonstrate that she is disabled, that the healthcare defendants are public accommodations, and that her requested accommodation was not granted, "the Court cannot ignore the [Defendants'] assertion that [they have] provided Plaintiff[] with an alternative accommodation:" the option to attend her medical appointments virtually. *S.B. by & through M.B. v. Lee*, No. 321CV00317JRGDCP, 2021 WL 4755619, at *18 (E.D. Tenn. Oct. 12, 2021) (collecting cases). Although much of the decisional law centers on the employment section of the ADA (Title I), the Sixth Circuit has expressed "no doubt that the decisional principles of these cases may be applied to [other] case[s] [involving Title II]." *Id.* at *18 (citing *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997)). Moreover, given the tenor of such a pronouncement, it follows that the decisional principles imported by the Sixth Circuit from Title I to Title II are similarly appropriate in the Title III context. Thus, that body of law enables this Court to consider fully the significance of a likely covered entity—like the healthcare providers—offering its own purported reasonable accommodation.

---

[3] Plaintiff enumerates a litany of what she apparently considers in-office only medical procedures including: blood draws, injections, echocardiograms, surgery, x-rays, cat scans, and wet moisture heat pads. (ECF No. 7 at 10, 12, 14).

Here, that is just the case. The Healthcare providers assert that the telehealth alternatives offered to Plaintiff are reasonable alternative accommodations to Plaintiff adhering to its on-premises mask policy. When this happens, "[p]laintiffs have to make a fact-specific showing that [the accommodation offered] is not an alternative reasonable accommodation for them." *S.B. by & through M.B.*, 2021 WL 4755619, at *19 (citing *Wilson v. Gregory*, 3. F.4th 844, 859–60 (6th Cir. 2021) (stating that the "determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry") (quotation omitted). This, of course, flows from the general proposition that a requester is not entitled to her preferred accommodation, but simply a reasonable one. *See Trepka v. Bd. of Educ.*, 28 F. App'x 455, 459–60 (6th Cir. 2002) (citing *Hankins v. The Gap*, 84 F.3d 797, 800–01 (6th Cir.1996)).

Plaintiff has not met this burden. Although not explicitly, Plaintiff argues that the telehealth services offered are not a reasonable accommodation because she ***requires*** in-office "medical procedures." Notably, however, Plaintiff does not actually assert any procedures that must be done in-office. Indeed, this absence of detail is telling; as explained above, Defendants were more than willing to fill the informational gap. First, Cornerstone Therapy's description of its virtual physical therapy offerings do not suggest that this alternative to in-office procedures is unreasonable for Plaintiff. Moreover, Plaintiff's silence and Cornerstone's proffer does little to demonstrate that this offered accommodation was not reasonable. Second, Orthopedic One's test results and consultation is the exact category of doctor's appointments that might be better suited for a phone or videoconferencing alternative. (*See* ECF No. 23 at 4–5). Finally, Mount Carmel's ability to provide remote checks of Plaintiff's medical device is again the type of routine, transactional "procedure" that ultimately provides Plaintiff with an exceedingly-accommodative

10

alternative to driving to the facility only to be told the device is working as expected. (*See* ECF No. 26 at 1).

Plaintiff has not carried the "heavy burden" of showing irreparable injury required for this Court to issue a temporary restraining order binding Defendants.

## IV. CONCLUSION

For the reasons set forth above, this Court **DENIES** Plaintiff's Motion for Emergency Preliminary Injunction or Temporary Restraining Order for ADA Accommodations (ECF No. 23). An appendix outlining the expedited briefing schedule and trial procedures to be followed at the Preliminary Injunction hearing follows this Order.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: January 24, 2022**

## BRIEFING SCHEDULE & PRELIMINARY INJUNCTION HEARING

Consistent with this Court's order at the 65.1 conference, the parties will observe the following briefing schedule. Plaintiff will file her Response in Opposition to Defendant Cornerstone Therapy's Motion to Dismiss on or before February 11, 2022. Cornerstone Therapy will file its Reply on or before February 18, 2022. Plaintiff will file her Response in Opposition to Defendant Orthopedic One's Motion for Summary Judgment on or before February 11, 2022. Orthopedic One will file its Reply on or before February 18, 2022. Plaintiff will file her Response in Opposition to Defendant Ohio Civil Rights Commission's Motion to Dismiss on or before February 18, 2022. The Ohio Civil Rights Commission will file its Reply on or before February 25, 2022.

The Preliminary Injunction hearing will be held on **Friday, March 4, 2022, at 9:30 a.m.** before the Honorable Algenon L. Marbley, United States District Court, 85 Marconi Boulevard, Columbus, Ohio, Court Room 1, Third Floor. The Court will not continue the hearing date except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of the exceptional circumstances.

The Court shall handle all discovery disputes for the purposes of the Preliminary Injunction briefing.

The parties, or a party, in its opening Preliminary Injunction brief, may move to consolidate the Preliminary Injunction hearing with the trial on the merits. If the motion to consolidate is not raised in a party's opening brief, it will be considered waived.

An appendix outlining the trial procedures to be followed at the Preliminary Injunction hearing follows.

## APPENDIX

## I. TRIAL PROCEDURES

### Counsel Tables

Plaintiff will occupy counsel table next to the jury box.  Defendant will occupy counsel table across from Plaintiff and, to the extent necessary, the pews in the gallery.

### Appearances

Counsel will enter their appearance with the Court Reporter and the Courtroom Deputy Clerk before the start of the opening session of the hearing.

### Addresses By Counsel

Counsel will address the Court in the following manner:

(a) All addresses to the Court will be made from the lectern facing the Court.

(b) Counsel shall stand when addressing the Court for any reason.

### Objections

Counsel will stand when making an objection and will make the objection directly and only to the Court.

When objecting, state only that you are objecting and the succinct legal basis for your objection.  Objections shall not be used for the purpose of making speeches, repeating testimony, or to attempt to guide a witness.

Argument upon an objection will not be heard unless permission is given or argument is requested by the Court.  Either counsel may request a bench conference.

### Decorum

Colloquy, or argument between counsel will not be permitted.  All remarks shall be addressed to the Court.

Counsel shall maintain a professional and dignified atmosphere throughout the hearing.

During the hearing, counsel shall not exhibit familiarity with witnesses or opposing counsel and shall avoid the use of first names.

During opening statements and final arguments, all persons at counsel table shall remain seated and be respectful so as not to divert the attention of the Court.

Do not ask the Court Reporter to mark testimony. All requests for re-reading of questions or answers shall be addressed to the Court.

### Demonstrative Evidence

If any sketches, models, diagrams, or other demonstrative evidence of any kind will be used during the proceeding, they must be exhibited to opposing counsel two days prior to the hearing. Objections to the same must be submitted to the Court prior to the commencement of the hearing. Demonstrative evidence prepared solely for the purpose of final argument shall be displayed to opposing counsel at the earliest possible time but in no event later than one-half hour before the commencement of the arguments.

Counsel must supply his/her own easel, flip charts, etc. for the hearing.

### Exhibits

Counsel will assemble and mark all exhibits and deliver them to the courtroom deputy prior to the commencement of the hearing. Plaintiff's exhibits will bear the letter prefix P followed by Arabic numerals and Defendant's exhibits will bear the prefix D followed by Arabic numerals.

Counsel should keep a list of all exhibits and should supply the Court, courtroom deputy and opposing counsel with a copy of the same.

Each counsel is responsible for any exhibits secured from the courtroom deputy. At the end of each hearing session, all exhibits shall be returned to the courtroom deputy.

The parties shall use three-ring tabbed notebooks for their exhibits which will be submitted two (2) days before the hearing. The parties shall provide one (1) copy of their tabbed exhibit notebook(s) to opposing counsel, and three (3) copies to the Court—one each for the Judge, the law clerk, and the courtroom deputy (for use at the witness stand).

Exhibits which are produced for the first time during the hearing, as in the case of exhibits used for impeachment, shall be tendered to the courtroom deputy for marking and then displayed to opposing counsel.

**Sanctions**

The parties and counsel shall comply fully and literally with this pre-hearing order. The Court will consider the imposition of appropriate sanctions in the event of non-compliance, including monetary sanctions, the dismissal of claims or defenses, or the exclusion of evidence. Fed. R. Civ. P. 16(f).

This order supersedes all previous orders in this case to the extent previous orders are inconsistent with this order.

The parties shall address questions about this Order to the Court's Law Clerk, Wayne Ritter, at (614) 719-3276, by way of a telephone conference with counsel for all parties participating, or with fewer than all counsel participating with express permission of non-participating counsel. Or, the parties may contact Mr. Ritter at wayne_ritter@ohsd.uscourts.gov, by way of email with counsel for all parties carbon-copied, or with fewer than all counsel carbon-copied with express permission of non-participating counsel.