IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROSANNA L. MILLER, | : |
| Plaintiff, | : Case No. 2:21-cv-03973 |
| v. | : Chief Judge Algenon L. Marbley |
| OHIO CIVIL RIGHTS COMMISSION, et al., | : Magistrate Judge Vascura |
| Defendants. | : |

## OPINION & ORDER

This matter comes before the Court on Defendants Mount Carmel Medical Group's ("Mount Carmel") and Gahanna Physical Therapy, Limited Partnership d/b/a Cornerstone Physical Therapy ("Cornerstone") respective Motions to Dismiss. (ECF Nos. 8, 11). For the reasons set forth more fully below, this Court **GRANTS** Defendants Mount Carmel's and Cornerstone Therapy's respective Motions to Dismiss. (*Id.*).

### I. BACKGROUND

The Court incorporates by reference the facts and procedural background set forth in its previous Order denying Plaintiff's Motion for Temporary Restraining Order. (ECF No. 29; Opinion & Order). The relevant procedural history follows. After this action was removed to federal court, Plaintiff proceeding pro se filed her Complaint on July 20, 2021. (ECF Nos. 1, 7). There, Plaintiff asserts several legal theories, including challenges to Defendants' conduct via[1] 42 U.S.C. §§ 12182, 12203 and existing state law analogues, Ohio Revised Code § 4112.02(G);

---

[1] Plaintiff here cites to various sections of the relevant laws and regulations, often to sections that do not provide for a private right of action. For example, Plaintiff liberally cites the definition section of 28 C.F.R.§ 36.101 et. seq. This Opinion will attempt to translate her kitchen-sink pleading approach.

1

federal informed consent regulations under 45 C.F.R. § 46.116; Ohio's promulgation of emergency mask orders under Revised Code § 119.03(G); and a relief provision under 28 C.F.R. § 36.504.

On July 26 and August 5, 2021, Defendants Mount Carmel and Cornerstone filed their respective Motions to Dismiss. (ECF Nos. 8, 11). Plaintiff filed her Response in Opposition to Mount Carmel on August 24, 2021, and to Cornerstone on February 28, 2022. (ECF Nos. 12, 42). Both Defendants timely filed their Replies. (ECF Nos. 13, 48). Defendants' Motions are now ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). And although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Finally, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017); *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019).

### III.  LAW & ANALYSIS

Mount Carmel and Cornerstone each move to dismiss Plaintiff's various claims. (ECF Nos. 8, 11). While Cornerstone moves to dismiss pursuant to 12(b)(5) and 12(b)(6) (*See* ECF No. 8), Mount Carmel argues that it is entitled to dismissal solely based on Plaintiff's failure to state a claim. (*See* ECF No. 11). Because the Court **GRANTS** Defendants' Motions under Rule 12(b)(6), the Court need not address Cornerstone's 12(b)(5) arguments.

Plaintiff identifies Mount Carmel and Cornerstone as "Resp II" in her Complaint. (ECF No. 7 at 2). Presumably, Resp is her abbreviation for Respondent, the term she uses to identify all Defendants on the first page of her Complaint. (*See id.* at 1) ("[D]ue to denied medical care by Respondents."). She then divides the Respondent groups into "Resp II" and "Resp III," seemingly to correspond to the applicable Title of the Americans with Disabilities Act ("ADA") she believes applies to her respective claims. (*See id.*). Although she uses the phrase "Resp II" in paragraph six of her Complaint to refer to Mount Carmel and Cornerstone, it appears she intended this "Resp II" group as "Resp III." (*See id.*). There, "Resp II" includes healthcare providers Mount Carmel and Cornerstone. (*See id.*).

Mount Carmel argues that Plaintiff fails to state a claim under the ADA and Ohio state analogues; federal informed consent regulations; Ohio's administrative procedure act; and under 28 C.F.R. § 36.504. (ECF No. 8). Cornerstone argues that Plaintiff's inability to identify the conduct Cornerstone engaged in that gives rise to her claims is fatal. (ECF No. 11 at 3). The Court analyzes Defendants' arguments in tandem, except for Retaliation under the ADA which Plaintiff only asserts against Mount Carmel. The Court addresses these arguments in turn.

#### A.  Reasonable Accommodation Under the ADA

Mount Carmel argues that Plaintiff's reasonable accommodation claim fails because her requested claim is neither necessary nor reasonable. (ECF No. 8 at 6). Specifically, Mount Carmel

3

points out that Plaintiff admits that her request was not medically necessary—indeed, her treating doctor explained it would undermine Plaintiff's health to allow her to enter its facilities or receive treatment without a mask. (*See id.*). Because her treating doctor specifically considered and denied her request on medical grounds, Mount Carmel argues her dispute is with her doctor's medical opinion and not the accessibility of Mount Carmel's facilities. (*Id.* at 7). Since the ADA does not provide a cause of action for such generalized grievances, her claim must fail. (*Id.*).

Plaintiff argues that she has sufficiently alleged: (1) that she is disabled under the ADA; and (2) that she was denied a reasonable accommodation. (*See* ECF No. 12 at 1–2). Plaintiff argues that her requested accommodation was necessary because she required in-office procedures, and that her requested accommodation is reasonable because it was previously offered by Mount Carmel, then retracted. (*See id.* at 2). Additionally, she asserts without authority that her "medical condition" was one that the Ohio Department of Health exempted from the mask requirement. (*See id.*).

To state a discrimination claim under Title III of the ADA, a plaintiff must show[2]: "(1) he or she is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA." *Mortland v. Loc. Cantina Dublin LLC*, No. 2:19-CV-01123, 2021 WL 3033355, at *4 (S.D. Ohio July 19, 2021) (Marbley, J.) (citing *Young v. Kali Hospitality, LTD.*, No. 2:07-CV-395, 2010 WL 3037017, at *4 (S.D. Ohio Aug. 2, 2010)).

To state a reasonable accommodation claim, the Court must determine "whether the requested policy or practice modification (1) is reasonable, (2) is necessary for the disabled individual, and (3) would fundamentally alter the nature of the activity at issue." *Access Ctr. for*

---

[2] Ohio courts look to federal ADA law when interpreting related state law. As such, this analysis only mentions the federal claim but also disposes of the analogous state law issue.

*Indep. Living v. WP Glimcher, Inc.*, No. 3:15-CV-444, 2018 WL 2763453, at *4 (S.D. Ohio June 8, 2018) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n. 38 (2001)). As recognized by the Court in *WP Glimcher, Inc.*, "[t]he word necessary means indispensable, vital, essential; requisite." *Id.* (citing Oxford English Dictionary (3rd ed. June 2003) (internal quotations omitted)). That is, the statute "does not require a place of public accommodation to provide a plaintiff with the ideal or preferred accommodation; rather, [it] requires that a defendant provide a plaintiff with an accommodation that is reasonable and permits the plaintiff to participate equally in the good, service, or benefit being offered." *Hernandez v. El Pasoans Fighting Hunger*, No. EP-21-CV-00055-DCG, 2021 WL 2763827, at *3 (W.D. Tex. July 1, 2021) (citing *Bailey v. Bd. of Comm'rs of Louisiana Stadium and Exposition Dist.*, 484 F. Supp. 3d 346, 365 (E.D. La. 2020)). "The ADA does not provide a general federal cause of action to challenge the sufficiency of the medical treatment of an individual's underlying disabilities." *Powell v. Bartlett Med. Clinic & Wellness Ctr.*, No. 2:20-CV-02118, 2021 WL 243194, at *8 (S.D. Ohio Jan. 25, 2021).

Assuming for the sake of argument that Plaintiff is able to meet the threshold requirements above, she still must demonstrate that her requested accommodation is necessary and reasonable. By Plaintiff's own words, her requested accommodation is not necessary. Dr. Tice, Plaintiff's treating doctor, considered and rejected Plaintiff's request to be exempted from Mount Carmel's early pandemic-era face-mask policy. (ECF No. 7 at 9). Indeed, Dr. Tice did not simply reject Plaintiff's requested accommodation; he recommended she do the opposite: "wear a mask *because* of her health condition." (*Id.*). Because Plaintiff includes these facts as a part of her Complaint, this is fatal to Plaintiff's reasonable accommodation claim.

Concerning Cornerstone, unlike Mount Carmel, not once does Plaintiff mention either its name or specific conduct that Cornerstone undertook.³ (*See id.* at 4–5). This alone Cornerstone argues is sufficient to dismiss this claim. Cornerstone is right. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Plaintiff simply does not plead enough facts—namely those implicating Cornerstone— to allow this Court to draw a *reasonable* inference that Cornerstone is liable for *any* misconduct. Moreover, to the extent resolving all plausible inferences in Plaintiff's favor allows this court with enough of a factual predicate to analyze, her claim still fails, since this Court is left with assuming that Cornerstone's mask policy—for purposes of this Motion—were identical in all respects to Mount Carmel's. As such, Plaintiff again fails to support her assertion that her requested accommodation was reasonable ***and necessary***. Instead of supporting her request, Dr. Tice proposed the exact opposite: to wear a mask due to health condition. Accordingly, this claim is **DISMISSED**.

### B. Retaliation Under the ADA

Mount Carmel argues that Plaintiff's claim regarding illegal retaliation under the ADA fails on two bases: procedural and substantive. Mount Carmel contends that Plaintiff fails to respond to this argument in her Response in Opposition because she cannot allege any facts to support this claim. (ECF No. 13 at 5). Further, Plaintiff's improper attachment to her Response shows that the adverse action in which she complains—Mount Carmel interrupting her prescription—is no longer taking place. (*Id.*). Substantively, Mount Carmel attacks every element of her allegation. (ECF No. 8 at 9–10). First, Mount Carmel argues that Plaintiff does not allege

---

³ This alone Cornerstone

with specificity what protected act she took. (*Id.* at 9). Second, Plaintiff simply does not allege that Mount Carmel had knowledge. (*Id.*). Third, Mount Carmel contends, Plaintiff fails to allege an adverse action because she admits that her prescriptions were uninterrupted during the pendency of her case. (*Id.* at 10). Fourth, Mount Carmel claims that Plaintiff simply does not assert a causal connection between her protected activity and the alleged adverse action. (ECF No. 13 at 5). Thus, Mount Carmel maintains this claim should be dismissed.[4]

Plaintiff does not clearly respond to Mount Carmel's argument on this claim. (*See* ECF No. 12). The Court will address these arguments in turn.

### 1. Mount Carmel's Procedural Attack: Failure to Respond

Although Plaintiff was representing herself at the time, "pro se litigants are still required to follow the rules of civil procedure." *Akaazua v. Walker Novak Legal Grp.*, No. 1:19-CV-31, 2019 WL 2388096, at *1 (W.D. Mich. Mar. 6, 2019), *report and recommendation adopted sub nom. Akaazua v. Walker Novak Legal Grp., LLC*, No. 1:19-CV-31, 2019 WL 4316130 (W.D. Mich. Sept. 12, 2019), *aff'd*, No. 19-2183, 2021 WL 4097500 (6th Cir. Jan. 8, 2021) (internal citations omitted). Such a failure to respond ordinarily results in waiver of that claim. *See Thorn v. Medtronic Sofamor Danek, USA, Inc.*, 81 F. Supp. 3d 619, 631 (W.D. Mich. 2015) (citing *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 Fed. Appx. 567 (6th Cir. 2013) (recognizing that the plaintiff had waived claim by failing to respond to or refute arguments made by the defendants in the district court); *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 Fed.Appx. 409, 412 (6th Cir. 2013) (same); *Humphrey v. U.S. Att'y Gen.'s Office*, 279 Fed.Appx. 328, 331 (6th Cir. 2008) (holding that the defendant waived any argument on the issue by failing to oppose

---

[4] Plaintiff does not appear to implicate Cornerstone in this claim as the alleged adverse action is a denial of prescribed medicine. Accordingly, without any specific allegations as to Cornerstone, this Court does not interpret the Complaint as alleging a claim against it.

7

a motion to dismiss); *Scott v. Tenn.*, 878 F.2d 382 (6th Cir. 1989) (affirming district court's grant of the defendant's unopposed motion to dismiss, and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion").

Although not clearly, Plaintiff does appear to reassert the adverse action she complained of in her complaint: her prescription being interrupted. (ECF No. 12 at 2). The Court need not address whether this level of response is sufficient to avoid waiver. In recognition of Plaintiff's then pro se status, this Court will consider Defendants' merits arguments.

2. *Defendants' Substantive Attack: Retaliation Claim on the Merits*

The Sixth Circuit has held that to assert a prima facie claim of retaliation a plaintiff must show: "(1) she engaged in protected activity under the ADA …, (2) the defendant knew of the protected activity, (3) the defendant took an adverse action against the plaintiff, and (4) there was a causal connection between the adverse action and the plaintiff's protected activity." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020) (citing *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 696 (6th Cir. 2013)). The Court will address these elements in turn.

a. *Protected Activity & Mount Carmel's Knowledge*

A plaintiff engages in protected activity under the ADA when she "has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." *Kirilenko-Ison*, 974 F.3d at 662 (citing 42 U.S.C. § 12203(a)). "Protected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." *Rorrer v. City of Stow*,

8

743 F.3d 1025, 1046 (6th Cir. 2014) (citing *Goonan v. Fed. Reserve Bank of New York*, 916 F.Supp.2d 470, 484–85 (S.D.N.Y. 2013)).

Here, Plaintiff asserts that she filed a complaint against Mount Carmel with the Ohio Civil Rights Commission because she was allegedly denied her request for a reasonable accommodation. Although Plaintiff does not clearly identify this as the protected activity, this may be inferred by the discussion surrounding her retaliation claim. (*See* ECF No. 7 at 6). The Sixth Circuit has recognized complaints filed with the OCRC as constituting protected activity. *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 113 (6th Cir. 2009). Thus, she has engaged in protected activity for purposes of her prima facie case at this stage.

Moreover, the attachment incorporated by reference in the Complaint, as is permitted on a motion to dismiss, sufficiently demonstrates that Mount Carmel was aware of Plaintiff's complaint.[5] *See* ECF No. 7 at 16 ("The Commission re-examined the information gathered during its original investigation and reviewed additional information provided by the ***parties.***") (emphasis added). Accordingly, Plaintiff has satisfied this element of the prima facie claim.

b. *Adverse Action*

Next, Plaintiff must show that Mount Carmel took an adverse action against her. "To be adverse in the context of an ADA … claim, the action must be enough to dissuade a reasonable person from engaging in the protected activity." *Hicks v. Benton Cty. Bd. of Educ.*, 222 F. Supp. 3d 613, 639 (W.D. Tenn. 2016) (citing *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013)). Such actions, however, that amount to "petty slights or minor annoyances" do not satisfy this element. *See Davis v. Metro Parks & Recreation Dep't*, 854 F. App'x 707, 716 (6th Cir. 2021).

---

[5] The Court may properly consider such documents on a Motion to Dismiss. *See Hiles v. Erwin*, No. 3:18-CV-P128-CRS, 2021 WL 1186316, at *3 (W.D. Ky. Mar. 29, 2021),

The Plaintiff claims that her three-month prescription was reduced to a one-month supply. (ECF No. 7 at 6). This, without more, is the precise type of "petty slights or minor annoyances" that do not rise to level of adverse action. Plaintiff's claim that her prescriptions stopped altogether, however, is indicative of adverse action—although her assertions here are unclear.[6] (*See id.*). To the extent Plaintiff asserted complete denial of medicine, she has alleged adverse action sufficiently.

### c. *Causal Connection*

To satisfy her prima facie pleading burden, Plaintiff must also allege a causal connection between her protected activity and the alleged adverse action. Plaintiff must allege facts that the "inference could be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity." *Johnson*, 344 F. App'x at 113 (citation omitted) (finding termination one year after plaintiff filed an OCRC charge and three months after plaintiff filed a lawsuit did not create an inference of causation). "In rare circumstances, temporal proximity may be enough to establish an inference of causation." *Id.* (citing *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Yet, "where some time elapses between when the [retaliator] learns of a protected activity and the subsequent adverse … action, the [Plaintiff] must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* Although this pleading requirement is not considered onerous, "it does rest on the plaintiff." *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

This is where Plaintiff's prima facie case fails. In addition to admitting that the alleged adverse action did not take place during the pendency of her OCRC complaint, Plaintiff offers no

---

[6] Plaintiff attaches a transcript from her pharmacy advising her that her prescription refill was denied by her prescriber on June 16. (ECF No. 7 at 15). Her Response explains that she made another refill request that was honored. (ECF No. 12 at 8). Further, it she attaches a refill receipt showing a prescription refill on August 9, 2021. (*Id.* at 8).

evidence that would support the inference that "could be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity." *See Johnson*, 344 F. App'x 104, 113 (6th Cir. 2009); *Nguyen*, 229 F.3d at 567. This proves fatal; this claim is **DISMISSED**.

### C. Informed Consent

Mount Carmel argues this claim fails because Plaintiff neither alleged facts that show that she participated in an experiment nor that she was otherwise entitled to informed consent under 28 CFR. § 46.116. (ECF No. 8 at 8). Mount Carmel contends that Plaintiff's use of hyperbole—asserting that requiring that she wear a mask violates the Nuremburg code—does not advance her argument. (*Id.*). Instead, according to Mount Carmel, Plaintiff simply alleges that she sought care at one of its facilities during the pandemic at which time Mount Carmel offered Plaintiff two options: (1) wear a face-mask during an in-person appointment; or (2) receive her care through a telehealth appointment. (*Id.*).

Plaintiff admits she never wore the mask, demonstrating she never participated in the unconsented experiment of which she complains. (*See* ECF No. 7 at 10, 12, 14). This internal inconsistency is fatal. Her Response, instead, makes startling and inappropriate comparisons to Nazi Germany. (ECF No. 12 at 5). As such, this claim falls woefully short. Accordingly, Plaintiff cannot maintain this alleged cause of action against either Mount Carmel or Cornerstone. This claim is **DISMISSED**.

### D. 28 C.F.R. § 36.504

Mount Carmel argues that Plaintiff's claim pursuant to 28 C.F.R. § 36.504 must fail because that regulation does not provide for a private right of action. (ECF No. 8 at 10). Instead, Mount Carmel argues this is reserved for civil actions initiated by the Attorney General of the

United States. (*Id.*). Plaintiff appears to abandon this claim in her Response. Thus, this claim must fail.

The purpose of 28 C.F.R. part 36 "is to implement subtitle A of title III of the Americans with Disabilities Act of 1990 (42 U.S.C. 12181–12189), as amended by the ADA Amendments Act of 2008 (ADA Amendments Act) (Pub.L. 110–325, 122 Stat. 3553 (2008))." 28 C.F.R. § 36.101. Part 36 has six subparts, one of which—Subpart E—is entitled "Enforcement." *See* 28 C.F.R. § 36.101–36.607. Under Subpart E, the regulations provide, among other things, enforcement by private citizens and the Attorney General of the United States. *See* 28 C.F.R. § 36.501–36.508. Section 36.504 entitled "Relief" enumerates available forms of relief pursuant to "civil actions under § 36.503." § 36.504. Actions under § 36.503, however, are reserved solely for the Attorney General of the United States." *See* 28 C.F.R. § 36.503 ("the Attorney General may commence a civil action in any appropriate United States district court").

Accordingly, Plaintiff cannot maintain this alleged cause of action against either Mount Carmel or Cornerstone. This claim is **DISMISSED**.

### E. Ohio Executive Orders Under R.C. § 119.03(G)

Mount Carmel argues that Plaintiff's claim about the illegality of the state's mask orders fails because it is not a state actor. (ECF No. 8 at 8). According to Mount Carmel, whether the State of Ohio may enter an executive order requiring masks has nothing to do with its conduct. (*See id.*). Absent an allegation that Mount Carmel is somehow a state actor or engaged in conduct that in any way relates to the legality of the state's mask order, Plaintiff's claim is misplaced. (*See id.*). Mount Carmel contends that because Plaintiff alleges no facts that could result in a "plausible" inference of wrongdoing, the claim necessarily fails. (*Id.* at 9).

12

Plaintiff responds to Mount Carmel's argument by simply reasserting that the emergency mask orders promulgated by the Ohio Department of Health are invalid. (ECF No. 12 at 4). Plaintiff also asserts a state constitutional argument providing another basis for why the emergency rule is invalid. (*See id.* at 4–5). Plaintiff does not, however, address Mount Carmel's argument about the Ohio Department of Health being the proper party to address this issue.

Chapter 119 of the Ohio Revised Code is the state's statutory law regarding Administrative Procedure. *See* Ohio Rev. Code § 119. Under that Chapter, the statute provides for Agency Rules, Agency Powers and Adjudication Hearings, Appeals, and Representation at Agency Hearings. *See* O.R.C. § 119. The statute provides the process for state agencies to promulgate rules, *see* O.R.C. § 119.03, and under 119.03(G), the law provides for emergency rulemaking. It is pursuant to this law that Plaintiff asserts that Ohio's Governor adopted the emergency mask mandates. Assuming that is true, the propriety of this rule has no bearing on Mount Carmel's conduct.

Absent an allegation that Mount Carmel was acting as a state actor in the enforcement of this mask order, Plaintiff is suing the wrong party. Instead, the proper procedure occurs when the regulated party challenges the validity of the rule directly by suing the appropriate state actor. *See e.g.*, *State ex rel. Ohio-Kentucky-Indiana Reg'l Council of Governments v. Ohio Bureau of Workers' Comp.*, 2021-Ohio-2001, ¶ 28; *O'Neal v. State*, 2020-Ohio-506, ¶ 1, 146 N.E.3d 605, 609 (Ohio Department of Rehabilitation and Correction); *Parrott v. State Med. Bd. of Ohio*, 2016-Ohio-4635, ¶ 1, 66 N.E.3d 1200, 1202. As such, she cannot maintain this action against either Mount Carmel or Cornerstone and this claim is **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendants Mount Carmel's and Cornerstone Therapy's respective Motions to Dismiss. (ECF Nos. 8, 11).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 31, 2022**